HART REFINERIES, APPELLANT, *v.* HARMON, STATE TREASURER, RESPONDENT.

(No. 6,234.)

(Submitted January 7, 1928. Decided January 31, 1928.]

[263 Pac. 687.]

*Gasoline License Tax—Constitutionality of Statute—Classification of Subjects—Equal Protection of Law—Interstate Commerce.*

Gasoline License Tax—Chapter 186, Laws of 1925 Held Constitutional.
  1.  *Held,* that Chapter 186, Laws of 1925, imposing a license tax upon dealers and distributors of gasoline (superseded by Initiative Measure No. 31, Laws of 1927, p. 604), under which a dealer sought to recover a tax paid under protest on the grounds that the Act was unconstitutional as offending against the equal protection of the law clause of the federal Constitution, as well as against the provisions of section 11, Article XII, section 11 of Article XV, and section 26 of Article V of the state Constitution,

---

1. Constitutionality and construction of gasoline inspection and tax statutes, see note in 47 A. L. R. 980.

to the effect that taxes shall be uniform upon the same class of
subjects, that foreign corporations engaged in business in the
state shall not have any greater rights or privileges than domestic
corporations, and that the legislative assembly shall not pass local
or special laws where a general law can be made to apply, is not
open to the attacks made upon it.

License Taxes—Classification of Subjects—Equal Protection of Law.
2. For the purpose of imposing a license tax, the legislative as-
sembly may make a reasonable classification of subjects, and if
all the subjects within a given class are accorded the same treat-
ment, the legislation cannot be said to deny to anyone within
such class the equal protection of the law, even though the burden
imposed upon him may be more onerous than that imposed upon
a member of another class.

Gasoline License Tax—When Gasoline Shipped into State No Longer
Subject of Interstate Commerce.
3. While the state may not, by taxation or otherwise, burden or
interfere with interstate commerce, where gasoline or distillate
brought into Montana from another state is stored in the original
packages to be sold in the state, it is subject to a property or a
license tax, it then being no longer a subject of interstate com-
merce.

[1–3] Commerce, 12 **C. J.**, sec. 129, p. 99, n. 25; sec. 141, p. 103,
n. 69. Constitutional Law, 12 **C. J.**, sec. 881, p. 1152, n. 65. Licenses,
37 **C. J.**, sec. 33, p. 184, n. 62; sec. 53, p. 201, n. 40, p. 202, n. 41.
Statutes, 36 **Cyc.**, p. 991, n. 87, p. 1010, n 51.

*Appeal from District Court, Lewis and Clark County; A. J.
Horsky, Judge.*

ACTION by the Hart Refineries against W. E. Harmon, as
State Treasurer. From a judgment on the pleadings in favor
of defendant, plaintiff appeals. Affirmed.

*Mr. John E. Patterson,* for Appellant, submitted a brief and
argued the cause orally.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,*
Assistant Attorney General, for Respondent, submitted a brief;
*Mr. Angstman* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

Under protest the plaintiff paid unto the defendant, as
state treasurer, for the quarter ending September 30, 1925, a

3. Licenses which state may exact upon commerce, see note in 27
**Am. St. Rep.** 561. See, also, 24 **Cal. Jur.** 129; 5 **R. C. L.** 708.

license tax, pursuant to the provisions of Chapter 186 of the
Laws of 1925, in an amount equal to two cents on each gallon
of gasoline and distillate "refined, manufactured, produced and
compounded by the plaintiff" and by it sold in the state, "or
shipped, transported or imported by the plaintiff into, and
distributed and sold by the plaintiff within the state of Mon-
tana after it had arrived in and was at a state of rest within
the state  *  *  *  whether sold in original packages or in
*  *  *  broken packages." This action was instituted to
recover the tax so paid. Judgment was entered upon the
pleadings in defendant's favor and appeal is by the plaintiff
prosecuted therefrom.

It is the plaintiff's contention that the statute upon the au-
thority of which the tax was collected is unconstitutional. It is
urged that it discriminates between Montana products and
those imported into the state; that it is in violation of section
1 of the Fourteenth Amendment to the Constitution of the
United States; and also section 11 of Article XII, section 11
of Article XV, and section 26 of Article V of the state Consti-
tution. Section 1 of the Fourteenth Amendment, so far as
applicable, provides that: "No state shall make or enforce any
law which shall abridge the privileges or immunities of citizens
of the United States  *  *  *  nor [shall any state] deny to
any person within its jurisdiction the equal protection of the
laws."

Section 11 of Article XII of the state Constitution provides
that: "Taxes shall be levied and collected by general laws
and for public purposes only," and that "they shall be uni-
form upon the same class of subjects within the territorial
limits of the authority levying the tax."

Section 11 of Article XV of the state Constitution denies
to foreign corporations engaged in business in this state "any
greater rights or privileges than those possessed or enjoyed"
by domestic corporations; and section 26 of Article V of our
Constitution restricts the legislative assembly, among other

things, from passing a local or special law where a general law can be made applicable.

The statute provides: "As used in this Act: The term 'person' means and includes every individual, firm, association, joint-stock company, syndicate, and corporation.

"The term 'distributor' means and includes every person who engages in the business in the state of refining, manufacturing, producing, or compounding gasoline or distillate, and selling the same in this state; and also every person who engages in the business in this state of shipping, transporting or importing any gasoline or distillate into, and making original sales of the same, in this state.

"The term 'dealer' means and includes every person, other than a distributor, who engages in the business in this state, of distributing or selling gasoline or distillate within the state." (Sec. 2381, Rev. Codes 1921.)

The Act under attack (Chap. 186, Laws of 1925) is amendatory of the provisions of sections 2382, 2383 and 2392 of the Revised Codes of 1921, whereby it is provided, so far as pertinent here, that: "Every distributor shall * * * pay to the state treasurer a license tax for engaging in and carrying on such business in this state, in an amount equal to two cents for each gallon of gasoline, and two cents for each gallon of distillate refined, manufactured, produced or compounded by such distributor and sold by him in this state, or shipped, transported or imported by such distributor into, and distributed and sold by him within this state, after it had arrived in and was brought to rest within this state, whether sold in the original packages or in the broken packages, during such year, provided that all gasoline and distillate distributed by any distributor to any of its service stations in this state shall be deemed to have been sold, and shall be treated and considered, in computing such license tax in the same manner as though the same had been sold to dealers or other persons." (Sec. 2382.)

"Every dealer shall, * * * when engaged in such business in this state, pay to the state treasurer * * * a license tax for engaging in such business in this state, equal to two cents for each gallon of gasoline and two cents for each gallon of distillate sold or distributed by such dealer in this state during such year, provided however, that no gasoline or distillate sold by such dealer, which was purchased by him from a producer who had paid the tax thereon, shall be included or considered in determining the amount of such license tax to be paid by such dealer, but only such gasoline and distillate as was shipped, transported or imported into this state and purchased by such dealer, before it had arrived in and was brought to rest within this state and then resold by such dealer, whether in the original packages or in broken packages, shall be included or considered for the purpose of computing the amount of such license tax." (Sec. 2383.)

The principal contention is that the law is discriminatory. Upon similar onslaught this Act has been by this court held to be constitutional (*State* v. *Silver Bow Refining Co.*, 78 Mont. 1, 252 Pac. 301), and notwithstanding the elaborate brief and argument of learned counsel for the appellant, we see no good reason to change our views in this regard.

1. The statute is not violative of the Fourteenth Amendment to the Constitution of the United States. (*State* v. *Silver* [1-3] *Bow Refining Co.*, supra.) That which would invalidate the law because of unjust discrimination has been thoroughly considered in the case last cited, and in the two cases entitled *State* v. *Sunburst Refining Co.*, 73 Mont. 68, 235 Pac. 428; Id., 76 Mont. 472, 47 A. L. R. 969, 248 Pac. 186.

The law is now settled. As was well said by Mr. Justice Matthews, speaking for this court in the *Silver Bow Refining Co. Case:* "As to the contention that products may be imported into the state for consumption without the payment of a tax, and thus users are induced to deal with outside concerns when their needs are sufficiently great to warrant buying in bulk and thus withdraw their patronage from dealers within the

state, the situation is one which cannot be remedied by state legislation. By sections 9 and 10, Article I, of the Constitution of the United States, the regulation of interstate commerce is granted exclusively to the Congress; Congress has long since acted on the subject, and 'the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government.' ''

''Equal protection of the law is seldom, if ever, obtained; and because of the very frailty of human agencies, the authorities all recognize the right of the legislative branch of government to make reasonable classification of subjects, for property or occupation taxes (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477), and if the classification is reasonable and if all of the subjects within a given class are accorded the same treatment, the legislation cannot be said to deny to anyone within such class the equal protection of the law, even though the burden imposed upon him may be more onerous than that imposed upon a member of another class (*Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250; Id., 223 U. S. 59, 56 L. Ed. 350, 32 Sup. Ct. Rep. 192 [see, also, Rose's U. S. Notes]).'' (*State* v. *Sunburst Refining Co.,* 73 Mont. 68, 235 Pac. 428.)

Under the authority of the case of *Sonneborn Bros.* v. *Cureton,* 262 U. S. 506, 67 L. Ed. 1095, 43 Sup. Ct. Rep. 643: ''It may be accepted * * * as settled beyond all further controversy that gasoline or distillate brought into this state from a sister state and stored in the original packages, afterward to be sold in this state, is no longer an article in interstate commerce, but is merely property in this state, and as such does not enjoy any greater privilege or immunity than gasoline or distillate' manufactured in this state. In other words, such gasoline or distillate, though brought here from another state and held in the original packages for sale in this state, is subject to a property tax, or may be made the basis

of an occupation tax, the same as gasoline or distillate manu-
factured in this state." (*State* v. *Sunburst Refining Co.,* 73
Mont. 68, 235 Pac. 428.)

"It is enough, for instance, if the classification is reasonably
founded in 'the purpose and policy of taxation.' " (*Watson*
v. *State Comptroller,* 254 U. S. 122, 65 L. E'd. 170, 41 Sup.
Ct. Rep. 43.)

"It is not open to objection unless it precludes the assump-
tion that the classification was made in the exercise of legis-
lative judgment and discretion." (*Stebbins* v. *Riley,* 268 U. S.
137, 44 A. L. R. 1454, 69 L. Ed. 884, 45 Sup. Ct. Rep. 424;
*Campbell* v. *California,* 200 U. S. 87, 50 L. Ed. 382, 26
Sup. Ct. Rep. 182.)

Referring to the Act under consideration here, this court
has heretofore expressed opinion that it eliminates most, if
not all, of the objectionable features contained in the statute
before amendment. (*State* v. *Sunburst Refining Co.,* 73 Mont.
68, 235 Pac. 428.) And it is noteworthy that the later Act of
1927 (Laws 1927, p. 604), in the language by it employed, is
an improvement upon the statute here considered.

2. As to just how the Act is violative of the various provi-
sions of the state Constitution counsel have neither favored
us with argument nor authority. We have carefully considered
and applied our constitutional provisions above alluded to,
and do not find the Act in violation of any thereof. It is a
general law for public purposes, is uniform in its application,
and therefore cannot be considered as violative of section 11
of Article XII. By its provisions a foreign corporation is not
given greater rights or privileges than those enjoyed by a
domestic corporation. The Act applies to both domestic and
foreign corporations alike. The situation is one which the
state must meet as equitably as possible in deference to para-
mount authority. (*State* v. *Silver Bow Refining Co.,* supra.)
In this instance it has done so.

In our opinion the provisions of section 11 of Article XV are
not so transgressed as to nullify the Act. It is not a local

or special law, but rather a general statute, and therefore argument to the effect that it is violative of the provisions of section 26 of Article V is wholly without merit.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Appeal taken to Supreme Court of the United States April 27, 1928.