89 P.2d 519

IDEN v. BUREAU OF REVENUE et al.

No. 4398.

Supreme Court of New Mexico.

Jan. 27, 1939.

Rehearing Denied April 24, 1939.

W. A. Keleher and Theo. E. Jones, both of Albuquerque, for appellant.

Richard E. Manson, Asst. Atty. Gen., and J. O. Walton, of Santa Fe, Atty. for Bureau of Revenue, for appellees.

BRICE, Justice.

On June 19, 1937, the appellant was appointed, by the district court of Valencia County, receiver for the creditors and stockholders of the Big Chief Lumber Company, a domestic corporation, as authorized by Sec. 32-175, N.M.Sts. 1929; and thereupon became possessed of the legal title to its property.

The Big Chief Lumber Co. (hereafter called the Lumber Company) was, from prior to 1934 and until it was placed in receivership, engaged in the business of "felling, skidding, bucking and sawing of standing timber into lumber and other products for sale and distribution." Among other products produced by the Lumber Company and by the receiver were railroad ties, which in the rough were sold and delivered to the Santa Fe Railroad Company at its "tie plant" near Albuquerque, New Mexico. The railroad company put such ties through a process of drying in the sun and open air

for eight months; cut them to the proper length; grooved them for tie plates and bored holes through each tie for spikes to hold the plate, rail and tie together; after which they were soaked for several hours in creosote for preservation. The railroad company purchased the ties for replacements in its own lines and not for resale.

In 1934 there was enacted Ch. 7 by the Special Session of the Legislature of that year, imposing an excise tax for engaging or continuing in businesses, professions, trades and callings for profit; providing for the levy, assessment, and collection of the tax. Among the provisions of the act are the following, material to a decision in this case:

"The term 'business' when used in this Act shall include all activities or acts engaged in (personal, professional, and corporate) or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect." Subsec. (f), Sec. 3, Ch. 7, L. 1934, Sp.Sess.

"The term 'retail', except as herein otherwise provided, means the sale of tangible personal property for consumption and not for resale in the form of tangible personal property, and 'retailer' means every person engaged in the business of making sales at retail." Subsec. (h), Sec. 3, Ch. 7, L. 1934, Sp.Sess.

"The term 'wholesaler' or 'jobber' means any person who sells tangible personal property for resale and not for consumption by the purchaser, except as herein otherwise provided." Subsec. (i), Sec. 3, Ch. 7, L. 1934, Sp.Sess.

"There is hereby levied, and shall be collected by the Tax Commission, privilege taxes, measured by the amount or volume of business done, against the persons, on account of their business activities, engaging, or continuing, within the State of New Mexico, in any business as herein defined, and in the amounts determined by the application of rates against gross receipts * * *." Sec. 201, Art. 2, Ch. 7, L. 1934, Sp.Sess.

"At an amount equal to one-fourth of one per cent of the gross receipts of the business of every person engaging or continuing in the business of manufacturing, smelting, refining, reducing, processing, compounding, fabricating, packing, preserving, distilling, preparing for sale or commercial use, or the making of wares, commodities or material products by hand or machinery; * * *." Subsec. B, Sec. 201, Art. 2, Ch. 7, L. 1934, Sp.Sess.

"At an amount equal to two per cent of the gross receipts of the business of every person engaging or continuing in the business of selling at retail of goods, wares, materials and commodities, for consumption and not for resale; * * *." Subsec. D, Sec. 201, Art. 2, Ch. 7, L. 1934, Sp. Sess.

The Act of 1934 was reenacted as Ch. 73 of N.M.L. 1935; with amendments and changes that do not affect the issues presented.

The question is whether Sec. 209 of the Acts of 1934 and 1935 exempts the Lumber Company from paying the two per cent tax levied under Sec. 201, subsec. D of the acts. Sec. 209 of 1934 act is as follows: "Any person exercising any privilege taxable under Paragraphs A, B or C of Section 201 of this Act and engaging in the business of selling his products at retail in this state shall be required to make returns of the gross proceeds of such retail sales, and shall pay upon such gross proceeds the tax imposed by Paragraph D of Section 201 of this Act, in addition to the tax imposed upon him by Paragraphs A, B or C of Section 201 of this act; but any such person engaging in the business of selling his products produced or manufactured in this state to wholesalers, jobbers, retailers, or manufacturers, or at wholesale sales as defined in this act, shall not be required to pay any tax in addition to that imposed upon him by said Paragraphs A or B of Section 201 of this Act."

The same section of the 1935 act is amended so that the exemption applies to "manufacturers, or at wholesale sales."

 It is agreed that the business of the corporation comes under classification B; and is therefore liable to a tax of one-fourth of one per cent of the gross receipts of the business. As the ties were sold to the railroad company for consumption, they are sold at "retail" as that word is defined by the act. Albuquerque Lumber Co. v. Bureau of Revenue, 42 N.M. 58, 75 P.2d 334. By the specific terms of subsec. D

of sec. 201 and sec. 209, the Lumber Company is liable for the tax unless relieved therefrom by the provisions of Sec. 209, exempting sales to manufacturers and others from the two per cent. tax.

The question is therefore reduced to whether the railroad company is a manufacturer within the meaning of the act.

That the railroad company manufactures ties for its consumption out of the prepared lumber furnished, we are satisfied and to that extent is a manufacturer. We are equally satisfied that the sales of ties made by the Lumber Company to the Railway Company are at retail and that it is a consumer of its own manufactured products. It thus appears there is an ambiguity in Sec. 209 of the act.

It is evident that the Act was intended to levy a tax equal to two per cent of the gross receipts of this business. It is so provided by Subsec. D of Sec. 201 and specifically applied to the Lumber Company's business by Sec. 209. If we should construe the word "manufacturer" as used in the act to include all who manufacture products, irrespective of the nature of their ordinary business, or whether they had bought at retail, then those who sell to them for their own consumption will escape paying their just portion of the taxes, if some manufacturing process is necessary to the use of such purchases.

The object of the act is to lay the tax on sales made to the ultimate consumer (Warren v. Fink, 146 Kan. 716, 72 P.2d 968; City of St. Louis v. Smith, Mo.Sup.

114 S.W.2d 1017) as is evident if sections 201, subd. D and 209 are considered together; and our construction should conform to the rule that one who claims exemption from a tax must bring himself clearly within the exemption provisions. Warren v. Fink, supra. If, therefore, by any reasonable construction it can be held that the word "manufacturer" is limited by the terms of this statute to those who manufacture products for sale, then the case should be affirmed.

"Webster defines 'manufacture' to be: 'The process or operation of making wares or any material products by hand, by machinery, or by other agency; often such process or operation carried on systematically with division of labor and with the use of machinery. Anything made from raw materials by the hand, by machinery, or by art, as clothes, iron utensils, shoes, machinery, saddlery.' And this definition in different forms of expression embodies the general idea that may be found in all the cases where the word has come up for construction; but, in applying it to the facts of particular cases in which the construction of ordinances or statutes was involved, the courts, especially in license and exemption cases, have found it necessary, in carrying out the legislative intent in the use of the word, to materially limit the scope of this general definition." Standard Tailoring Company v. City of Louisville et al., 152 Ky. 504, 153 S.W. 764, 765, 44 L.R.A.,N.S., 303, Ann.Cas.1915B, 220. Also see 38 C.J. "Manufacturers" Sec. 20.

We conclude that the word "manufacturer," as used in this statute, has reference to one who manufactures and sells his products, and not to one who consumes them.

This construction comports with the general intent of the statutes to lay the tax against gross retail sales. To construe the word "manufacturer" in its broadest sense, as appellant contends for, would relieve those who sell at retail to those who consume their products, from the tax; notwithstanding it is specifically laid by Secs. 201, subsec. D and 209. No such inconsistency could have been intended.

The judgment of the district court is affirmed.

It is so ordered.

BICKLEY, C. J., and ZINN, and SADLER, JJ., concur.

MABRY, J., did not participate.