610 P.2d 1210

**Hugh ARNOLD and Max Chavez, Petitioners,**

v.

**STATE of New Mexico, Respondent.**

**Robert E. SHELTON and Speedway Drive-In Food Stores, Inc., Petitioners,**

v.

**STATE of New Mexico, Respondent.**

**Roy CHRISTENSEN, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

**Nos. 12638, 12641 and 12645.**

Supreme Court of New Mexico.

March 11, 1980.

Moore & Golden, Robert C. Knight, Los Alamos, for Hugh Arnold and Max Chavez.

Sommer, Lawler, Scheuer & Simons, Joseph A. Sommer, Thomas A. Simons, IV, Santa Fe, for Robert E. Shelton and Speedway Drive-In Food Stores.

Jeff Bingaman, Atty. Gen., Donald B. Monheimer, Asst. Atty. Gen., Santa Fe, for State of New Mexico.

Jones, Gallegos, Snead & Wertheim, Steven L. Tucker, Santa Fe, for Roy Christensen.

## OPINION

FEDERICI, Justice.

Three cases have reached us on appeal. They all arise out of the same cause of action and present the same issue and are therefore consolidated in this opinion.

Defendants were charged with restraint of trade contrary to § 57–1–1, N.M.S.A. 1978, by grand jury indictments.

The question presented for review is whether the State's interception of the defendants' conversations on the telephone violated the Abuse of Privacy Act, § 30–12–1, et seq., N.M.S.A. 1978.

Defendants filed a motion in the trial court to suppress the evidence obtained through telephonic interception. The motion was sustained. The Court of Appeals reversed. Each of the defendants filed writs of certiorari. We reverse the Court of Appeals and affirm the district court.

On December 12, 1977, Mr. Kelly, the informant, operator of Hilltop Service Station in Los Alamos, was contacted by James W. Ernest, special investigator of the Attorney General's Office of the State of New Mexico to request Mr. Kelly's cooperation in the investigation of possible price-fixing activities in Los Alamos County. At the trial, the evidence showed that Mr. Ernest delivered to Mr. Kelly certain recording equipment belonging to the State of New Mexico and instructed him (Kelly) in its use and operation. Subsequently, Mr. Ernest requested that Mr. Kelly call each of the defendants and record the conversation. The calls were initiated by Mr. Kelly in the presence of Mr. Ernest. Prior to the calls Mr. Ernest instructed Mr. Kelly on the desired subject matter of the calls; namely, gas prices, signs advertising gas prices, and any admissions of agreements between the defendants and other persons with regard to gas prices and gas price signs. Upon conclusion of the recorded conversations with the defendants, Mr. Ernest took the tape cassette in custody on behalf of the attorney general's office.

No order of court was obtained prior to the installation of the telephonic device and the recording of the conversations.

The New Mexico Abuse of Privacy Act, §§ 30–12–1, et seq., N.M.S.A. 1978, imposes a limitation upon the right of a district attorney or the attorney general to obtain evidence of commission of certain crimes through the use of wiretapping, eavesdropping, or the interception of oral or wire communications. Section 30–12–2 provides that the procedures mentioned are permit-

ted only by order of a judge of the district court after application of the attorney general or district attorney and upon a showing of probable cause to believe that evidence may be obtained of the commission of a crime.

The New Mexico Abuse of Privacy Act was amended in 1979. However, the communications involved in this case occurred prior to the amendment and therefore the Act as it existed at that time is applicable here.

Section 30–12–1 provides, insofar as applicable here, specific exemptions to the authority of the attorney general or district attorney to obtain an order of interception.

30–12–1. *Interference with communications; exception.*

Interference with communications consists of knowingly:

\* \* \* \* \* \*

B. cutting, breaking, tapping or making any connection with any telegraph or telephone line, wire, cable or instrument belonging to another;

C. reading, hearing, interrupting, taking or copying any message, communication or report intended for another by telegraph or telephone without his consent;

\* \* \* \* \* \*

E. using any apparatus to do or cause to be done any of the acts hereinbefore mentioned or to aid, agree with, comply or conspire with any person to do, or permit or cause to be done any of the acts hereinbefore mentioned.

Whoever commits interference with communications is guilty of a misdemeanor, unless such interference with communications is done under a court order as provided in Sections 30–12–2 through 30–12–11, NMSA 1978, or unless such interference with communications is done by an operator of a switchboard or an officer, employee or agent of any communication common carrier in the normal course of activity which his employment while engaged in any is a necessary incident to the rendition of his services or to the protection of rights or property of the carrier of such communication.

Section 30–12–3 provides for the form of application to obtain a court order. Section 30–12–4 provides for a determination of probable cause before entry of the order. Section 30–12–5 provides the requirements of the contents of the order. Section 30–12–8 limits the use of the intercepted wire or oral communication, and sets forth the procedure for relief in the event the interception is unlawful.

30–12–8. *Use of contents as evidence; disclosure; motion to suppress.*

A. The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing or other proceeding in a state court unless each party, not less than ten days before the trial, hearing or proceeding has been furnished with *a copy of the court order and accompanying application, under which interception was authorized or approved.* . . . (Emphasis added.)

■ In construing the language of the statute, the following rules of statutory construction are well established in New Mexico and are pertinent: The court must ascertain and give effect to the intention of the Legislature in construing a statute. *Trujillo v. Romero*, 82 N.M. 301, 481 P.2d 89 (1971). Legislative intent is to be determined primarily from the language used in the Act or statute as a whole. *Winston v. New Mexico State Police Bd.*, 80 N.M. 310, 454 P.2d 967 (1969); *State v. Roland*, 90 N.M. 520, 565 P.2d 1037 (1977), *cert. denied*, 90 N.M. 637, 567 P.2d 486 (1977); *State v. Tapia*, 89 N.M. 221, 549 P.2d 636 (1976); *State v. McHorse*, 85 N.M. 753, 517 P.2d 75 (1973); *Santa Fe Downs, Inc. v. Bureau of Revenue*, 85 N.M. 115, 509 P.2d 882 (1973).

■ In interpreting a statute the intent is to be first sought in the meaning of the words used, and when they are free from ambiguity and doubt and express plainly, clearly and distinctly the sense of the Legislature, no other means of interpre-

tation should be resorted to. *City of Roswell v. New Mexico Water Quality Control Commission*, 84 N.M. 561, 505 P.2d 1237 (1972), *cert. denied*, 84 N.M. 560, 505 P.2d 1236 (1973). Our courts are required to give common sense interpretations to the statutes. *State v. Olive*, 85 N.M. 664, 515 P.2d 668 (1973), *cert. denied*, 85 N.M. 639, 515 P.2d 643 (1973).

■ Based upon these rules of statutory construction it is reasonably clear to this Court that the Legislature intended the phrase "without his consent" as used in § 30–12–1(C) to refer to the sender of the communication. Since in all three of the incidents cited on appeal there was no consent by the sender of the communication, the use of such communication is prohibited. Section 30–12–8, N.M.S.A. 1978.

The State cites *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct.App. 1977), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977), in support of its contention that the telephonic communications should not have been suppressed. *Hogervorst* is distinguishable. It involved a *face-to-face conversation* between a defendant and the district attorney, which was monitored by a concealed device carried by the district attorney.

In view of the result we reach under the statute, we do not reach the constitutional issue.

The Court of Appeals is reversed and the trial court is affirmed. This cause is remanded to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C. J., concurs.

BRUCE E. KAUFMAN, District Judge, specially concurs.

EASLEY and PAYNE, JJ., dissent.

BRUCE E. KAUFMAN, District Judge (specially concurring).

I concur in the result in the opinion as stated by Justice Federici.

In my view, the issue here is not a constitutional one. It is a matter of statutory construction which does not require tortured semantics to achieve what I believe to be the ascertainable legislative intent.

The citations which seek to justify the interception on the basis of federal cases in my view are readily distinguishable because of the variant statutes involved. *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 is, as pointed out in Justice Federici's opinion, a distinguishable fact situation.

It is the factual predicate from which the instant situation arises which makes it clear to me that the intended application of the statute here at issue (§ 30–12–1, et seq., N.M.S.A. 1978), would not allow utilization of the communications interception and the subsequent admission into evidence as was propounded here. It must be made absolutely clear that because of the modification in the statutes subsequent to the events here that the limited finding and rule of this case is limited to these facts and these facts alone.

It is urged that the more recent case of *State v. Glass*, 583 P.2d 872 (Alaska 1978), requires the reversal of the Court of Appeals on a constitutional basis with this as a persuasive precedent and authority; I do agree that the line of argument is similar and that some suppression to some degree would be indicated given the *Glass* dicta, but again reiterate that I do not view this matter under the New Mexico Act as one invoking constitutional principals, but rather, the appropriate application of the statute then in effect. To allow or require that this case be controlled by such precedential citation would distort the true rule of the case, and I believe, could erroneously direct those seeking guidance under the amended act now in force and effect.

It is my view that the Court of Appeals should be reversed and the evidence suppressed in its entirety, and I concur in that result by Justice Federici.

PAYNE, Justice, dissenting.

I respectfully dissent.

The majority has held that the interception of the defendants' conversations on the

telephone violated the Abuse of Privacy Act, Section 30–12–1, N.M.S.A. 1978. Based upon that holding the evidence obtained through telephonic interceptions of conversations initiated by the defendants would be suppressed.

The pertinent provisions of the Privacy Act state as follows:

Interference with communications consists of:

\* \* \* reading, hearing, interrupting, taking or copying any message, communication or report *intended for another* by telegraph or telephone *without his consent* \* \* \*. (Emphasis added.)

I disagree with the conclusion reached by the majority that the phrase "without his consent" refers to the sender of the communication. Grammatically the word "his" must refer back to some person previously mentioned in the statute. The only previous reference to a person in the statute is in the phrase "intended for another." This phrase is found immediately before the words "without his consent." In this case Mr. Kelly, the intended recipient, had consented to the State's agent hearing and copying the communication intended for him.

There seems to be little rational basis for interpreting the statute to preclude the recipient of a conversation over the telephone from giving consent for its recording when (1) the recipient can himself testify from memory as to the conversation and what the defendants might have said, although from an evidentiary standpoint, the recorded testimony could be more reliable than the memory of the recipient of the message. (2) A face-to-face conversation could be recorded and used as evidence without the knowledge or consent of the initiator of the conversation. *State v. Hogervorst*, 90 N.M. 580, 566 P.2d 828 (Ct.App. 1977), *cert. denied*, 90 N.M. 636, 567 P.2d 485 (1977). (3) A person's justifiable expectations of privacy lie not within the means of communicating a message, but with the confidence he has in the recipient.

I respectfully dissent.

EASLEY, J., concurs.